FINE ART WALLPAPER, demandante y recurrente, *v.* IVÁN
WOLFF y la SOC. LEGAL DE GANANCIALES, ETC., deman-
dado y recurrido.

*Número:* O-74-179      *Resuelto:* 13 de septiembre de 1974

452

*Kiefer & Vázquez* y *Jorge Calero Blanco,* abogados del recurrente; *Walter Pierluisi,* abogado del recurrido.

EL JUEZ ASOCIADO SEÑOR TORRES RIGUAL emitió la opinión del Tribunal.

Reprobamos la discreción ejercitada por las salas de instancia al dejar sin efecto una sentencia válidamente dictada y reabrir este caso para darle la oportunidad al demandado Iván Wolff, aquí interventor, de presentar su prueba. A la luz del prolongado trámite seguido en el caso tal proceder desvirtúa la finalidad de los procedimientos judiciales, aumenta la congestión en el calendario y demora indebidamente el trámite judicial.

Se trata de una simple acción de cobro de dinero mediante la cual la peticionaria Fine Art Wallpaper reclamó al interventor Iván Wolff la cantidad de $1,802.52. La demanda fue presentada hace más de 5 años, el 15 de abril de 1969, sin que todavía una sencilla controversia como ésta haya sido resuelta en forma definitiva.

El récord revela un trámite penosamente prolongado por múltiples suspensiones, según veremos a continuación. En aras de la brevedad nos limitaremos al trámite seguido desde el 1972 en adelante. Antes de esa fecha hubo cinco suspensiones de vista, cuatro de las cuales fueron solicitadas por el interventor Wolff.

1. Se suspendió la vista señalada para el 6 de marzo de 1972 a petición del interventor Wolff porque su abogado tenía señalamiento en otras Salas para un caso de alteración a la paz y otro de conducir en estado de embriaguez.

2. Se hizo un nuevo señalamiento para el 13 de marzo y se suspendió a petición del demandante señalándose de nuevo para el 15 de mayo y subsiguientemente para el 7 de agosto.

3. El 31 de julio volvió el interventor Wolff a pedir suspensión de la vista señalada para el 7 de agosto. Esta vez adujo que su abogado no estaría en Puerto Rico para esa fecha y no regresaría hasta después del 15 de agosto.

4. Se señaló de nuevo para el 28 de agosto advirtiendo el tribunal en su resolución que sería la última suspensión.

5. El 28 de agosto Wolff no compareció a dicho señalamiento ni adujo razones para su incomparecencia procediendo, entonces, el tribunal de instancia a dictar sentencia de acuerdo con la prueba presentada por el demandante, aquí peticionario.

La sentencia dictada por el Tribunal de Distrito se notificó a Wolff el 19 de septiembre de 1972. No fue hasta cerca de tres meses después que compareció su abogado solicitando que la misma se dejara sin efecto. Adujo que desde el mes de abril se encontraba fuera de su oficina y alejado de la práctica de la profesión y que tuvo que mudar su oficina y por omisión involuntaria no pudo comparecer a tiempo para solicitar la posposición de la vista. Pero, sin embargo, debe recordarse que el 31 de julio solicitó la suspensión de la vista señalada para el 7 de agosto por el fundamento de que para dicha fecha se encontraba fuera de Puerto Rico y no regresaría hasta después del 7 de agosto, lo cual conflige con su alegación de que desde abril se encontraba alejado de la profesión.

El Tribunal de Distrito, sin aducir fundamentos y, bajo el palio acomodaticio de una vaga conclusión a los efectos de que así convenía a los mejores fines de la justicia, dejó sin efecto la sentencia para darle oportunidad al interventor Wolff de presentar su prueba.

El Tribunal Superior, en una parca resolución confirmó en apelación la reapertura del caso también sin exponer fundamento alguno.

El trámite indebidamente prolongado de este caso pone de relieve la falla de los jueces que intervinieron en el mismo en mantener un control efectivo del calendario encausando los procedimientos con firmeza a fin de evitar la congestión y las demoras indebidas. Los jueces de instancia tienen la obligación de hacer un esfuerzo razonable de ver los casos y decidirlos. A tono con esta responsabilidad deben desalentar las suspensiones injustificadas mediante las aplica-

ciones de sanciones. En la jurisdicción federal se ha tenido notable éxito en acelerar los calendarios con la aplicación rigurosa de sanciones.

Las suspensiones injustificadas son la causa mayor de la demora en la litigación. Como bien apunta la Comisión Para el Estudio de los Tribunales en su Informe al Consejo Sobre la Reforma de la Justicia:

"Las dilaciones interminables e injustificadas comprometen los derechos básicos individuales y de la ciudadanía en general y mina la confianza y fundamento de un sistema bajo el imperio de la ley. La mayor falla y debilidad que ha experimentado la administración de justicia en Puerto Rico y en otras jurisdicciones es y ha sido las dilaciones prolongadas e indebidas.

Los efectos de las dilaciones y suspensiones tradicionalmente reconocidos se pueden consignar en las siguientes proposiciones:

1) Afecta la confianza y fe en el sistema, jueces, fiscales, abogados y demás integrantes;

2) Impone gravámenes económicos adicionales sobre los acusados, partes, testigos y demás ciudadanía;

3) Contribuye a la congestión de casos y afecta adversamente el presupuesto funcional del sistema de justicia del país;

4) Alienta el deterioro de evidencia ante la indisponibilidad (ausencia, desaparición o muerte) de testigos, pérdida de memoria sobre hechos esenciales, etc.;

5) Fomenta un sentido de injusticia debido a que el transcurso de mucho tiempo crea inseguridad e incerteza en la determinación final factual y jurídica de las controversias; y

6) Propicia acuerdos o arreglos injustos." (Informe al Consejo Sobre la Reforma de la Justicia, Vol. II, págs. 262 a 264.)

Hay varios factores que los jueces de instancia deben considerar al proveer sobre una solicitud de suspensión de vista: a) fecha de radicación del caso, si es de radicación reciente o ha estado pendiente por largo tiempo, b) trámite seguido en el mismo, las suspensiones anteriores y las causas de las mismas, c) objeciones de la parte adversa, especialmente, como le afecta la suspensión, los gastos en que ha incurrido para traer ante el tribunal su prueba, y d) las razones

que se aducen para la suspensión solicitada. La evaluación del conjunto de estos factores permitirá al juez de instancia hacer una determinación razonable sobre la solicitud de suspensión, recordando siempre su obligación de controlar los procedimientos con firmeza a fin de evitar la congestión y demoras indebidas. De concederse la suspensión la mejor práctica es la de hacer en corte abierta un nuevo señalamiento dentro del término más corto posible, quedando allí mismo notificados los abogados, las partes y sus testigos. Ello aligera los procedimientos y elimina papeleo innecesario en la secretaría del tribunal.

■ Como norma general, cuando un demandado haya dejado de comparecer a un señalamiento sin que aparezca en el récord razones que justifiquen o expliquen tal incomparecencia, como sucedió en este caso, el tribunal debe continuar la vista con la prueba del demandante y dictar sentencia como corresponda. De la misma manera, debe desestimar la demanda cuando es el demandante el que sin aducir razones no comparece a un señalamiento.

■ En tales casos, la desestimación de la demanda o la vista celebrada ex parte no tiene carácter de final. El tribunal tiene siempre la facultad para dejarlas sin efecto por causa justificada y bajo las condiciones que considere justas. La Regla 49.2 de Procedimiento Civil reconoce esta facultad de los tribunales para relevar a una parte de una sentencia por error, inadvertencia, sorpresa o negligencia excusable, entre otras causas.

■ Nuestro ordenamiento jurídico favorece que los pleitos se resuelvan en sus méritos pero al hacer uso del remedio de reapertura provisto por la Regla 49.2 deben tenerse en cuenta las nociones a que hicimos referencia en *Southern Construction Co.* v. *Tribunal Superior*, 87 D.P.R. 903, 906 (1963). Y es que no podemos perder de vista el interés legítimo de los litigantes y de la sociedad en general en que la litigación se tramite en un término razonable y que su adjudi-

cación sea final. La finalidad promueve certeza en los procedimientos judiciales, lo cual es de fundamental importancia para la administración de justicia y para el orden social. De ahí que como pauta rectora de la discreción conferida por la Regla 49.2 hayamos formulado la norma de que los tribunales de instancia deben establecer un balance justo entre el interés de que los pleitos se resuelvan en sus méritos y el interés en evitar congestión en el calendario y demoras innecesarias en el trámite judicial. *Díaz* v. *Tribunal Superior*, 93 D.P.R. 79 (1966).

■ La reapertura decretada en el caso de autos constituye, a la luz de la pauta señalada en *Díaz* v. *Tribunal Superior*, supra, un abuso de discreción

El caso fue señalado en múltiples ocasiones teniendo el interventor amplia oportunidad de una vista en los méritos. Finalmente el tribunal de instancia apercibió a las partes de que se llevaría a efecto el último señalamiento. El interventor no compareció, no adujo razones para su incomparencia, no solicitó suspensión de la vista. En estas circunstancias fue correcta la determinación del tribunal de disponer del caso conforme la prueba presentada por el demandante. El error consistió en reabrirlo sin haberse demostrado justa causa para ello.

■ La única razón que adujo el interventor en su moción de reapertura fue al efecto de que no pudo percatarse del señalamiento por estar alejado de la práctica de la profesión y que por una omisión involuntaria no solicitó la posposición del caso. Esta mera alegación no constituye, ni puede constituir, negligencia excusable bajo la Regla 49.2. Los abogados no pueden descargar su responsabilidad profesional alegando, como en este caso, un mero descuido. Ellos vienen obligados a hacer todas las gestiones necesarias para cumplir con los señalamientos, evitar dilaciones indebidas en los trámites·y solución de casos, y, desplegar su habilidad y capacidad en forma responsable tanto para beneficio de su

cliente como del tribunal. Cuando por razones justificadas no puedan representar adecuadamente un cliente deben renunciar la representación profesional obteniendo previamente el permiso del tribunal y tomando aquellas medidas razonables para evitar perjuicios a los derechos de su cliente. Canon Núm. 20 de Ética Profesional. 4 L.P.R.A. Ap. IX, C. 21 (supl. de bolsillo).

█ Como puede verse, éste es un caso en que aun aplicando la interpretación más liberal posible de la Regla 49.2 o aun bajo las más laxas normas de administración de justicia—que rechazamos—no puede prevalecer la actuación de las salas de instancia dejando sin efecto la sentencia originalmente dictada por constituir ello un claro abuso de discreción. Aparte del trámite indebidamente prolongado, hay un fundamento adicional que militaba contra la reapertura: El interventor ni siquiera alegó en su moción de reapertura, y menos aun demostró, que tenía una defensa válida que oponer a la reclamación del peticionario. Véase *J.R.T.* v. *Missy Mfg. Corp.*, 99 D.P.R. 805 (1971).

Debemos hacer constar que hemos considerado la oposición del interventor a la solicitud de *certiorari* como su comparecencia mostrando causa a tenor con nuestra orden del pasado 6 de junio, a pesar de que el término que le concedimos para comparecer venció el 20 de junio y no fue hasta el 29 de julio que compareció.

*A tenor con lo anteriormente expuesto se expide el auto solicitado y se dictará sentencia revocando la resolución aquí recurrida.*