ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| RORY D. CRAWFORD<br><br>Parte Recurrida<br><br>v.<br><br>AIDA LIZ SOTO, CARLOS OSORIO Y LA SOCIEDAD LEGAL DE BIENES GANANCIALES DBA ENGINEERED DOORS, WINDOWS AND MORE<br><br>Parte Recurrente | TA2026RA00126 | *Revisión Judicial,* procedente del Departamento de Asuntos del Consumidor<br><br>Caso Núm.:<br>SAN-2025-0020674<br><br>Sobre:<br>Contrato de obras y servicios |
| --- | --- | --- |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y la Jueza Prats Palerm.

Monge Gómez, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 30 de marzo de 2026.

Compareció ante este Tribunal la parte recurrente, la Sra. Aida Liz Soto, el Sr. Carlos Osorio y la Sociedad Legal de Bienes Gananciales (en adelante, "Soto-Osorio" o "Recurrentes"), mediante recurso de revisión judicial enmendado presentado el 24 de marzo de 2026. Nos solicitó la revocación del *Relevo de Resolución* (en adelante, "Resolución") emitido por el Departamento de Asuntos del Consumidor (en adelante, "DACo") el 6 de marzo de 2026. Mediante el referido dictamen, el foro administrativo declaró "No Ha Lugar" una solicitud de relevo de resolución presentada por los Recurrentes.

Examinada la solicitud de autos, la totalidad del expediente y el estado de derecho aplicable, prescindimos de la comparecencia de la parte recurrida, al amparo de la Regla 7(B)(5) del Reglamento de este Tribunal,[1] y por los fundamentos que expondremos a continuación, se *confirma* la *Resolución* emitida por el DACo.

---

[1] *Véase,* Regla 7 (B)(5) del Reglamento del Tribunal de Apelaciones, según enmendada, *In re* Aprob. Enmdas. Reglamento TA, 2025 TSPR 42, pág. 15, 215 DPR __ (2025).

**I.**

El caso de autos se originó con la presentación de una "**Querella**" presentada por el Sr. Rory D. Crawford en contra de Soto-Osorio, h/n/c Engineered Doors Windows & More, sobre incumplimiento de un contrato de obras y servicios relacionado con la fabricación e instalación de puertas y ventanas en un bien inmueble perteneciente al señor Crawford. Conforme fue acordado por las partes, el costo del proyecto ascendería a $61,268.14, de los cuales el señor Crawford pagó como depósito el 50% de la cuantía total. Luego de un tiempo de que el señor Crawford le diera seguimiento a los Recurrentes, el 11 de junio de 2024, Soto-Osorio le indicó a este último que ninguna de las ventanas estaba completada. Según surge de los autos, esto constituyó una incongruencia con comunicaciones sostenidas entre las partes, pues los Recurrentes habían informado que ya estaban a más del 50% de la producción.

Debido a lo anterior, el señor Crawford solicitó a Soto-Osorio la devolución del depósito pagado y se vio en la obligación de contratar otra alternativa para la instalación de las puertas y ventanas. Tras varios trámites procesales impertinentes a las controversias que nos ocupan, el 28 de agosto de 2025, el DACo emitió *Resolución*, luego de haber celebrado una vista administrativa en la cual estuvieron presentes las partes, en unión a sus respectivos representantes legales. Mediante el aludido dictamen, el foro *a quo* concluyó que el señor Crawford demostró que pagó la cantidad de $30,634.07 a los Recurrentes, por concepto de depósito para iniciar el proyecto. Asimismo, dispuso que el contrato habido entre las partes establecía que la instalación de las puertas y ventanas se efectuaría en un periodo de entre 90 a 120 días laborables.

Igualmente, coligió que el señor Crawford se mantuvo indagando sobre el estatus del proyecto e incluso solicitó que se adelantara la instalación de las ventanas del área de la cocina para poder proceder con el montaje de los gabinetes de la cocina, ya que los mismos estaban listos y no podían permanecer más tiempo en el almacén del contratista. De igual forma, expuso el foro recurrido que los Recurrentes le representaron que el proyecto estaba a más del 50%, mas, sin embargo, cuando el señor

Crawford visitó la tienda de Soto-Osorio, éstos le informaron que ninguna de las ventanas estaba completada debido a que no había medidas finales. Finalmente, el DACo estableció que los Recurrentes se limitaron a ofrecer distintas excusas e incumplieron con los términos contractuales relacionados con la entrega del proyecto en el tiempo estipulado.

En vista de lo anterior, el foro administrativo ordenó la devolución del depósito pagado por el señor Crawford en el término de treinta (30) días, más el interés legal que se acumulara. Por estar insatisfechos, Soto-Osorio presentó una solicitud de reconsideración el 23 de septiembre de 2025, luego de admitir que la misma se presentó fuera del plazo para ello, debido a motivos de salud de su representante legal. Alegaron que dicha situación constituía justa causa para su incumplimiento. Del expediente surge que el DACo no atendió dicha petición, por lo que la misma se entendió rechazada de plano.

Inconformes, los Recurrentes presentaron ante este Tribunal un recurso de revisión judicial, bajo el alfanumérico TA2025RA00338. Analizado el expediente del caso, un panel hermano de este foro desestimó el aludido recurso, tras concluir que el mismo se presentó tardíamente. Ello, tras colegir que la petición de reconsideración se presentó fuera del plazo estatutario y, por tanto, no tuvo efecto interruptor. Así pues, se determinó que el plazo para recurrir comenzó a transcurrir el 2 de septiembre de 2025, fecha en que se notificó la *Resolución* del 28 de agosto de 2025. Por tanto, el término para que los Recurrentes pudieran presentar su recurso venció el 2 de octubre de 2025 y el mismo fue presentado el 16 de noviembre de 2025.

Remitido el mandato por parte de la Secretaria de este Tribunal, el 26 de enero de 2026, Soto-Osorio presentó una "**Moción Solicitando Enmienda de Sentencia bajo las Reglas 49.1 y 49.2 de las Reglas de Procedimiento Civil y Solicitud de Vista Argumentativa Obligatoria**" (en adelante, "Moción de Relevo"). A través de la misma, los Recurrentes sostuvieron que procedía dejar sin efecto la *Resolución* del 28 de agosto de 2025, puesto que la presentación tardía de la moción de reconsideración y del recurso de apelación, caso núm. TA2025RA00338, fue consecuencia

directa de una situación de fuerza mayor y ajena a la capacidad de Soto-Osorio para defenderse o actuar diligentemente, luego de la hospitalización y posterior fallecimiento de su representante legal. Sostuvieron que permitir que se mantuviera dicho dictamen otorgaría una ventaja indebida para el señor Crawford y equivaldría a castigarlos por la tragedia personal de su representante legal. En resumidas cuentas, Soto-Osorio argumentó que procedía su *Moción de Relevo* porque su abogado se enfermó de tal forma que no pudo preparar y presentar a tiempo su moción de reconsideración.

El 6 de marzo de 2026, el DACo emitió la *Resolución* recurrida mediante la cual declaró "No Ha Lugar" la *Moción de Relevo* interpuesta por los Recurrentes. Razonó que el estado de salud de su representante legal no excusaba su inacción ante el hecho de que la *Resolución* del 28 de agosto de 2025 fue notificada tanto a éstos como a su representante legal. Entendió el foro administrativo que no se configuró negligencia excusable para presentar la moción de reconsideración en controversia, puesto que Soto-Osorio no actuó diligentemente para proteger sus derechos, a pesar de tener pleno conocimiento del dictamen que recayó en su contra.

En desacuerdo con dicha determinación, los Recurrentes presentaron el recurso que nos ocupa mediante el cual le imputó al DACo la comisión de los siguientes errores:

> Erró el DACO al concluir que la *Resolución* del 28 de agosto de 2025 fue debidamente notificada, cuando el propio abogado de récord declaró expresamente, bajo su firma, no haber recibido dicha correspondencia. Dicho defecto de notificación constituye una violación al debido proceso de ley que impide que los términos procesales hayan comenzado a decursar válidamente.

> Erró el DACO al no interpretar la jurisprudencia aplicable a las mociones de relevo de sentencia bajo la Regla 49.2 de las Reglas de Procedimiento Civil de Puerto Rico, 32 L.P.R.A. Ap. V., R.49.2.

> Erró el DACO al desestimar y negarse a celebrar una vista evidenciaria antes de resolver la Moción de Relevo de Resolución, privando a la Parte Apelante de su derecho a ser oída y a presentar la prueba extrínseca al expediente que la propia jurisprudencia exige para acreditar los fundamentos de la moción.

> Erró el DACO al aplicar un estándar rígido e irrazonable de negligencia excusable, sin realizar la evaluación individualizada que exige la jurisprudencia, ignorando que: (a) la Parte Apelante carece de conocimiento jurídico y dependía totalmente de su representación legal; (b) el abogado de récord padecía una condición médica terminal que le impedía

atender el caso; y (c) dicho abogado no recibía efectivamente la correspondencia del Departamento.

Erró el DACO al no considerar la Moción de Reconsideración del 20 de noviembre de 2025 como una moción de relevo de sentencia al amparo de la Regla 49.2, a pesar de que la misma alegaba fundamentos suficientes-negligencia excusable y violación al debido proceso por falta de notificación al abogado para ser tratada como tal, conforme a la interpretación liberal que ordena la jurisprudencia.

Erró el DACO al desestimar como fundamento para negar el relevo como fundamento de la negligencia excusable, el fallecimiento del abogado de récord y su condición médica terminal previa, siendo estas circunstancias completamente ajenas a la voluntad de la Parte Apelante, de naturaleza extraordinaria, y reconocidas por el propio Tribunal de Apelaciones como potencialmente constitutivas de negligencia excusable en su Sentencia del 13 de noviembre de 2025.

Erró el DACO al aplicar la doctrina del "deber de diligencia reforzado" - derivada de la doble notificación al abogado y a la parte-a una parte que carece de todo conocimiento jurídico, y estando representado por su abogado, no recibía efectivamente dicha correspondencia, sin tomar en cuenta que ambos presupuestos indispensables para la aplicación de dicha doctrina estaban ausentes en el presente caso.

Erró el DACO al ignorar, sin investigación ni justificación alguna, la declaración expresa del abogado de récord en el inciso 9 de su moción del 20 de noviembre de 2025, en la que afirmó bajo su firma no haber recibido la resolución que se pretendía hacer cumplir, actuando de forma arbitraria y caprichosa en violación al principio de adjudicación justa y fundamentada que exige LPAU en su Sección 3.4 de la LPAU (3 L.P.R.A. § 9654), la cual dispone que la "La agencia deberá notificar copia simple por correo ordinario o electrónico a las partes, y a sus abogados de tenerlos, la orden o resolución a la brevedad posible."

Erró el DACO al no reconocer que la Sra. Isel Rodríguez es una parte indispensable para la adjudicación de las controversias, al igual que falló en identificar a la corporación, Enginlum, LLC., como la otra parte indispensable para una solución completa del pleito. (Apéndice XIII: Moción en Solicitud Se Incluya Parte Indispensable con fecha de 6 de marzo de 2025, Página 57-59.)

Erró el DACO por no haber ordenado incluir en el proceso a dos partes indispensables, teniendo en su poder evidencia suficiente de que la parte querellante hizo negocio, no con la parte apelante-querellada, sino con la corporación de la parte apelante-querellada, Engilum, LLC. Si la parte apelada-querellante, pesar de haber sido notificada de la existencia de la corporación por la parte apelante-querellada, no enmendó la querella o hizo gestión alguna para traer a Engilum, LLC. Quien cobró y procesó el contrato de obra objeto de la presente causa de acción, por lo que la resolución del 28 de agosto del 2025 es nula.

## II.

### A.

Es norma reiterada en nuestro ordenamiento jurídico que los tribunales apelativos están llamados a abstenerse de intervenir en las decisiones administrativas, ya que éstas poseen una presunción de legalidad y corrección. ECP Incorporated v. OCS, 205 DPR 268, 281 (2020); Torres Rivera v. Policía de PR, 196 DPR 606, 626 (2016). Cónsono con ello, se ha resuelto que las decisiones de las agencias administrativas gozan de la mayor deferencia por los tribunales. Oficina de Ética Gubernamental v. Martínez Giraud, 210 DPR 79, 88-89 (2022). Ello debido a que dichos entes gubernamentales son los que poseen el conocimiento especializado y experiencia en los asuntos que les son encomendados. Super Asphalt v. AFI, 206 DPR 803, 819 (2021).

Sin embargo, recientemente, nuestro Tribunal Supremo cambió esta norma de deferencia hacia las decisiones administrativas, al adoptar la opinión del Tribunal Supremo de los Estados Unidos en el caso de Loper Bright Enterprises v. Raimondo, 603 US 369 (2024). En específico, determinó que la interpretación de las leyes es una tarea que le corresponde a los tribunales y dispuso que estos, en el ejercicio de su función revisora, deberán actuar con el rigor que prescribe la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico de 2017 y no ser guiados por la deferencia automática. Vázquez v. Consejo de Titulares, 2025 TSPR 56, 215 DPR ___.

La Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017 (en adelante, "la LPAU") dispone que "[l]as determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo". 3 LPRA sec. 9675. Así pues, la intervención judicial en estos casos ha de centrarse en tres aspectos principales: (1) si el remedio concedido fue apropiado; (2) si las determinaciones de hechos están razonablemente sostenidas por la prueba y (3) si las conclusiones de derecho del organismo administrativo son correctas. P.R.T.C. Co. v. J. Reg. Tel. de P.R., 151 DPR 269, 281 (2000).

Podemos decir que la deferencia reconocida a la decisión de una agencia administrativa cede en las siguientes circunstancias: cuando no está basada en evidencia sustancial, cuando el organismo administrativo ha errado en la aplicación de la ley y cuando ha mediado una actuación irrazonable o ilegal. T-JAC, Inc. v. Caguas Centrum Limited, 148 DPR 70, 80 (1999).

Según lo ha definido el Tribunal Supremo en diversas ocasiones, evidencia sustancial es "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". Hilton Hotels v. Junta Salario Mínimo, 74 DPR 670, 687 (1953). Por ello, quien impugne las determinaciones de hechos de una agencia administrativa tiene el deber de presentar ante el foro judicial la evidencia necesaria que permita, como cuestión de derecho, descartar la presunción de corrección de la determinación administrativa. El peso de la prueba descansa entonces sobre la parte que impugna la determinación administrativa. Com. Vec. Pro-Mej., Inc. v. J.P., 147 DPR 750, 761 (1999). Además, debe demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración. Rebollo v. Yiyi Motors, 161 DPR 69, 76-77 (2002).

Las conclusiones de derecho, tal y como surge de la Sección 4.5 de la LPAU, *supra*, deben ser revisadas en todos sus aspectos. 3 LPRA sec. 9675. Sin embargo, esto no significa que, al ejercer su función revisora, podamos descartar liberalmente las conclusiones e interpretaciones de la agencia, sustituyendo el criterio de ésta por el propio. "Al evaluar los casos es necesario distinguir entre cuestiones de interpretación estatutaria, en la que los tribunales son especialistas, y cuestiones propias para la discreción o pericia administrativa". Adorno Quiles v. Hernández, 126 DPR 191, 195 (1990).

No obstante, la deferencia judicial en la revisión de determinaciones administrativas no conlleva la renuncia de este Tribunal a su función revisora. La deferencia reconocida no equivale a la dimisión de la función revisora de este foro apelativo intermedio en instancias adecuadas y

meritorias, como resulta ser cuando la agencia ha errado en la aplicación de la ley. Reyes Salcedo v. Policía de P.R., 143 DPR 85, 94 (1987).

**B.**

El Reglamento Núm. 8034 de 14 de junio de 2011, también conocido como el "Reglamento de Procedimientos Adjudicativos" del DACo, establece un proceso adjudicativo uniforme para la evaluación y disposición de querellas instadas ante o por dicha entidad gubernamental. El fin ulterior del mismo es asegurar la solución justa, rápida y económica de las mismas. *Véase*, Regla 1, Reglamento Núm. 8034, pág. 1.

En lo pertinente al caso que nos ocupa, la Regla 31.3 de dicho cuerpo reglamentario autoriza el relevo a una parte o a su representante legal de una resolución, orden o procedimiento por los fundamentos y bajo los términos establecidos en la Regla 49.2 de Procedimiento Civil, *infra*. Así pues, la Regla 31.3 del Reglamento Núm. 8034 incorpora el texto y la normativa aplicable a la aludida la regla procesal, que provee el mecanismo para dejar sin efecto el alcance de una sentencia, siempre que se cumpla con alguno de los fundamentos allí esbozados.

**C.**

La Regla 49.2 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R.49.2, dispone el mecanismo procesal que se tiene disponible para solicitar el relevo de los efectos de una sentencia adversa cuando esté presente alguno de las razones allí expuestas. El propósito de dicha Regla consiste en impedir que se frustren los fines de la justicia mediante tecnicismos y sofisticaciones. García Colón *et al*. v. Sucn. González, 178 DPR 527, 539 (2010). Este remedio permite al tribunal realizar un balance entre dos principios de cardinal importancia en nuestro sistema legal: (1) que todo litigio sea resuelto y tenga su conclusión y (2) que en cada caso se imparta justicia. Náter v. Ramos, 162 DPR 616, 624 (2004). En detalle, la referida Regla dispone que el tribunal puede relevar a una parte de una sentencia, orden o procedimiento cuando exista alguno de los siguientes fundamentos:

> (a) error, inadvertencia, sorpresa o negligencia excusable;
> (b) descubrimiento de evidencia esencial que, a pesar de una debida diligencia, no pudo haber sido descubierta a tiempo para solicitar un nuevo juicio de acuerdo con la Regla 48;

(c) fraude (incluso el que hasta ahora se ha denominado "intrínseco" y el también llamado "extrínseco"), falsa representación u otra conducta impropia de una parte adversa;

(d) nulidad de la sentencia;

(e) la sentencia ha sido satisfecha, renunciada o se ha cumplido con ella, o la sentencia anterior en que se fundaba ha sido revocada o de otro modo dejada sin efecto, o no sería equitativo que la sentencia continúe en vigor, o

(f) cualquier otra razón que justifique la concesión de un remedio contra los efectos de una sentencia. 32 LPRA Ap. V, R.49.2. (énfasis suplido).

Para que proceda el relevo de sentencia bajo la antedicha Regla, es necesario que el peticionario justifique su solicitud amparándose en al menos una de las causales anteriormente mencionadas. García Colón et al. v. Sucn. González, *supra*, pág. 540. No obstante lo anterior, relevar a una parte de los efectos de una sentencia adversa es una decisión discrecional de los tribunales, excepto en los casos de nulidad o cuando la sentencia ya ha sido satisfecha. Náter v. Ramos, *supra*, pág. 624. Así pues, nuestro Tribunal Supremo ha expresado que el precepto debe interpretarse de manera liberal y cualquier duda debe resolverse a favor de la persona que solicita que se deje sin efecto la sentencia, a fin de que el proceso continue y la controversia pueda resolverse en sus méritos. García Colón *et al*. v. Sucn. González, *supra*, pág. 541. **Es decir, este mecanismo procesal postsentencia no está disponible para alegar cuestiones sustantivas que debieron ser planteadas mediante los recursos de reconsideración y apelación**. Íd.

En cuanto a la controversia que nos ocupa, la moción de relevo de sentencia fundamentada en error, inadvertencia, sorpresa o negligencia excusable requiere que los tribunales efectuemos un análisis y balance racional y justiciero o que no sería equitativo que la sentencia continuara en vigor o existe cualquier razón que justifique la concesión de un remedio contra los efectos de la sentencia. J. Cuevas Segarra, Tratado de Derecho Procesal Civil, Tomo IV, Pub. JTS, 2da Ed., 2011, pág. 1408.

Así pues, es indispensable que el promovente de la solicitud demuestre, por preponderancia de la prueba, hechos que justifican su solicitud. Desde esta perspectiva, es importante recordar que "los errores del abogado son imputables a la parte y la atan". Íd., pág. 1410. Por tanto, además de la existencia de error, inadvertencia, sorpresa o negligencia

excusable, es indispensable que exista una defensa meritoria. Peña Lacern v. Martínez Hernández *et al.*, 210 DPR 425, 439-440 (2022). Por ende, ante un reclamo de negligencia, es necesario que el promovente justifique su desidia mediante motivos adecuados, pues, tal y como dispone la Regla 49.2 de Procedimiento Civil, *supra*, su negligencia debe ser excusable.

En fin, el remedio que provee la Regla 49.2 no constituye una facultad judicial absoluta y el análisis sobre su procedencia debe estar fundamentado en que haya certeza y estabilidad en los procesos ante los tribunales y se eviten demoras innecesarias. Fine Art Wallpaper v. Wolf, 102 DPR 451, 457-458 (1974). Después de todo, este mecanismo procesal no constituye una llave maestra para reabrir controversias. García Colón *et al.* v. Sucn. González, 178 DPR 527, 541 (2010).

**III.**

En resumidas cuentas, los Recurrentes sostienen que procede la revocación de la *Resolución* recurrida basados en los siguientes fundamentos: (1) que la *Resolución* del 28 de agosto de 2025 no fue notificada adecuadamente; (2) que el DACo debió conceder el relevo de la *Resolución* del 28 de agosto de 2025, basado en la existencia de negligencia excusable y no celebrar una vista argumentativa para evaluar la procedencia de los planteamientos esgrimidos relacionados con dicha solicitud; y (3) al descartar los argumentos relacionados con la nulidad de la aludida determinación del 28 de agosto de 2025 por falta de parte indispensable.

En primer término, Soto-Osorio sostiene que el DACo erró al descartar su argumento relacionado a la falta de notificación de la *Resolución* del 28 de agosto de 2025 al que fue su representante legal. Sobre ello, argumenta que mediante el escrito que intituló "**Moción de Reconsideración de Resolución y Solicitud de Aceptación por Presentación Tardía Debido a Justa Causa**" del 20 de noviembre de 2025, se argumentó que la *Resolución* del 28 de agosto de 2025 no fue notificada al Lcdo. Edgar Lebrón Landrau (en adelante, "licenciado Lebrón").

No obstante, un análisis detenido de dicho escrito devela que tal alegación no fue claramente articulada. Por el contrario, el planteamiento

sobre notificación se limitó a señalar que el DACo no emitió respuesta a la solicitud de reconsideración presentada el 23 de septiembre de 2025, lo cual, como cuestión de derecho, no constituye una obligación de la agencia. En ese sentido, no se configuró un defecto sustancial en la notificación de la *Resolución* original que impidiera el comienzo del término jurisdiccional para recurrir. Aún más, del expediente administrativo surge que la *Resolución* fue notificada conforme a derecho, lo que activa la presunción de corrección de las actuaciones administrativas y debilita el planteamiento de violación al debido proceso. De hecho, del expediente ante nos no se desprende documento o evidencia alguna que demuestre lo contrario.

En su escrito, los Recurrentes cuestionan la facultad discrecional del foro administrativo para conceder o negar la moción de relevo de sentencia, y si dicha discreción se ejerció debidamente al no conceder el remedio de relevo de sentencia sin ofrecer los fundamentos para su decisión.

Según explicamos, y como norma general, la concesión o denegatoria de una solicitud de relevo de sentencia es una decisión discrecional. **Por considerar que no estamos ante alguna de las excepciones reconocidas a esta norma** (nulidad o cuando la sentencia ha sido satisfecha), **la determinación recurrida está revestida de discreción**. Como se sabe, este Tribunal de Apelaciones no debe intervenir con la discreción del foro primario, salvo que su decisión resulte arbitraria o en un abuso de su discreción. BPPR v. SLG Gómez-López, 213 DPR 314, 334 (2023).

En el caso de autos, el DACo, dentro de su sana discreción, denegó la *Moción de Relevo* presentada por los Recurrentes, ya que no procede el relevo de sentencia bajo ninguna de las modalidades contempladas en la referida Regla. **Concluimos que esta decisión no es arbitraria y tampoco constituye un abuso de su discreción**.

Aquí, los Recurrentes presentaron una *Moción de Relevo* al amparo de la Regla 49.2 de Procedimiento Civil, *supra*. Fundamentaron su solicitud en el inciso (a) de la referida Regla, alegando la existencia de negligencia excusable, atribuible a la condición de salud y posterior fallecimiento de su

representante legal, lo cual, según sostienen, les impidió actuar oportunamente dentro de los términos jurisdiccionales.

No obstante, el mero hecho de fundamentar una *Moción de Relevo* en negligencia excusable no es suficiente para que proceda el remedio solicitado. No basta con alegar que la omisión que dio lugar a la determinación adversa se debió a tales circunstancias, sino que el promovente debe, además, demostrar la existencia de una defensa meritoria que justifique dejar sin efecto la *Resolución* impugnada. Lo anterior tiene una particular relevancia en el caso que nos ocupa, porque distinto a un pleito en el que la parte que promueve la solicitud de relevo no estuvo involucrada de forma alguna en los procedimientos, en el presente caso, los Recurrentes participaron activamente de todo el proceso administrativo ventilado ante el DACo.

Tan es así que comparecieron a la vista adjudicativa, junto con su representante legal, el licenciado Lebrón, y tuvieron la oportunidad de presentar la evidencia relacionada con su teoría y defensas. Por tanto, no estamos ante el caso en el que Soto-Osorio no pudo esgrimir sus planteamientos ante el foro administrativo, sino, todo lo contrario, tuvieron amplia oportunidad para convencer al DACo de sus defensas y postura ante las alegaciones esgrimidas por el señor Crawford en su "**Querella**". Así pues, la defensa que requiere la jurisprudencia interpretativa cuando se solicita el relevo de una determinación basado en negligencia excusable ya fue planteada ante el ente adjudicador, por lo que darle paso a la solicitud de los Recurrentes sería, precisamente, permitir que este mecanismo procesal se utilice como una llave maestra para relitigar asuntos que ya fueron ventilados en una vista adjudicativa final y sobre los cuales el foro *a quo* evaluó prueba y le aplicó el peso probatorio que entendió procedía.

A esos efectos, los Recurrentes descansan en que su incumplimiento procesal responde a circunstancias extraordinarias fuera de su control, particularmente la incapacidad de su abogado para atender el caso. Sin embargo, del expediente del caso núm. TA2025RA00338 surge que la *Resolución* del 28 de agosto de 2025 fue notificada tanto a su representante legal como a los propios Recurrentes, quienes tenían conocimiento del

dictamen adverso. A pesar de ello, no realizaron gestiones diligentes para proteger sus derechos ni para comparecer oportunamente ante el foro correspondiente.

Determinamos que dichas circunstancias, aunque lamentables, no constituyen un error, inadvertencia o negligencia excusable que haya impedido a los Recurrentes ejercer sus derechos de forma oportuna. Ello es así, particularmente cuando contaban con conocimiento independiente de los efectos de la *Resolución* del 28 de agosto de 2025 y aun así no actuaron con la diligencia mínima requerida.

Por otro lado, resulta improcedente el planteamiento de los Recurrentes en cuanto a la alegada ausencia de una parte indispensable, toda vez que no lograron demostrar que dicha persona ostenta un interés de tal naturaleza que hiciera imposible la adjudicación completa y efectiva de la controversia en su ausencia. En el presente caso, la controversia se circunscribe al alegado incumplimiento contractual entre las partes comparecientes, por lo que el foro adjudicador podía resolverla adecuadamente sin la inclusión de terceros. Sólo las partes contratantes tienen un interés de tal magnitud que su acumulación en el pleito es forzosa. Según alegado por los Recurrentes, la presunta falta parte indispensable en el caso era la Sra. Isel Rodríguez, quien participó en calidad de traductora del señor Crawford en las negociones que culminaron con la aceptación de los términos y condiciones del contrato en controversia. Sin embargo, ésta no figuró como parte contratante, sin cuya comparecencia el DACo estaba impedido de adjudicar la controversia que tenía ante sí. En consecuencia, no se configura el requisito de indispensabilidad que amerite declarar la nulidad de la *Resolución* recurrida.

Por consiguiente, concluimos que, aunque la *Moción de Relevo* se presentó al amparo del inciso (a) de la Regla 49.2 de Procedimiento Civil, *supra*, los Recurrentes no lograron demostrar la existencia de negligencia excusable conforme a la jurisprudencia aplicable, ni ningún otro fundamento en derecho al amparo del cual procedía el relevo de los efectos de la Resolución del 28 de agosto de 2025. Del mismo modo, de la *Resolución* recurrida surge claramente el fundamento para denegar el remedio

solicitado, a saber, que la petición no cumple con ninguna de las causales establecidas en dicha Regla. En consecuencia, coincidimos con esa determinación y resolvemos que DACo actuó correctamente al declarar "No Ha Lugar" la solicitud presentada por los Recurrentes.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral del presente dictamen, se *confirma* la *Resolución* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones